Tomatoes, Campuzano-Burgos v. Midland Credit Good morning, Your Honors, and may it please the Court, my name is Tomio Narita. And with me today in the courtroom is James Gicking. We represent all of the appellants in this case, the Midland entities, as well as the two executives of those companies that were sued in this class action. He didn't even do enough work to move up to the big table.  Let me ask this. As I read this, it usually comes up in the terms of constitutional guarantees, but all I could think of, well, not all I could think of, but one of the things that struck me about this case is the old, and I'll get hit with the illusions again, but using a shield as a sword. And you look at this letter, and this almost seems like an, not almost seems like, it seems like an ideal communication between a debt collection agency and a debtor. I mean, there's not really even a demand for payment in here. It's basically, let's work together to solve your problem. Reading it, it reminded me of something you might get from a debt counseling agency, rather than a debt collection agency. How is this letter consistent with the intent, if we interpret it your way, how is this, let's assume a misrepresentation, how is that consistent with congressional purpose in enacting this statute, if we allow the kind of misrepresentation you're talking about here to give rise to damages? Okay. I'll save that. Perhaps you should save that for my accounts. As Emily Luchilla would say, never mind. I couldn't agree with you more, though, Your Honor. Just say thank you. Before I go much further, I would request four minutes for rebuttal. Okay. Is this a dunning letter? I don't believe so. In the sense that the word dun is defined. I'm not sure I know, but it certainly doesn't look like any dunning letter that I've seen. I don't believe it's a dunning letter, Your Honor. There's a footnote in our reply brief where we found one definition of dunning letter, and a dun is really a demand for payment. It's a demand, and there's really no demand here. The letter, which I'd like to read from during the argument this morning. Well, we have the letter. We've all read it. But from your perspective, how did this happen? Is it just the letters went out, and someone in the company decided that they were going to use the names of these senior people on the letter to give the letter more of an appearance of authority, or how did that happen? You know, Your Honor, I thought about that question before I came in. Really, the only honest answer that I can give to the court on that, and I think the only answer that is reflected in this record, is I don't know. It doesn't make a difference, though. I don't think it does, Your Honor. It doesn't, and I think that the Cruz decision from the Northern District of California that we submitted picks up on why it doesn't matter. It doesn't matter because the intent of my clients in sending the letter really is not relevant under this letter, this challenge. What's relevant is its impact. If we look at the statute, where does intent filter into whether or not it's a misrepresentation? Well, if you look at the statute and the cases of this court that have interpreted the statute, the focus is on the impact of the letter on the least sophisticated debtor. Right, but the intent may not. Well, depending on what the letter says, the intent may or may not be relevant to how the least sophisticated debtor is going to interpret or read that letter. I'm not sure I understand, and if I do, I'm not certain that I agree, Your Honor. The intent of my clients, the debt collectors, becomes relevant perhaps later in a case if a court has found a violation and then there's a damage determination. One of the things under 1692Ka3 that you can look at is the intent of the debt collector and whether it was intentional and repeated and so forth. But we're not at that stage. We're not at that stage yet. So I really don't believe that the intent as to why my client put this signature block matters to this appeal, and there's nothing in the record on it. There really are not a lot of cases out there interpreting this act, period. Are there? I was on the Rosenow panel earlier this year. That was an E3 case mostly. This is an E9 case. It's E and E9. Correct. It would seem to me that under E9, the words source, authorization, approval, all or some of them may have some import for the resolution of this case. Are there any cases out there that interpret the meaning of those terms? There's really not much, Your Honor. We've cited to you the Youngblood decision, which I think is persuasive and instructive. But those are desk names. It's different. I mean, that's a different use of a, I'll say false. It's not really a false source. But it's a different use of inquiring into the inaccuracy of the name source. I think you're correct. I agree with you, Your Honor. It is different. There really isn't much directly on point on this particular subsection, and now we're talking about E9, 1692 E9. Right, but it does create, looking just at the technical matter, which doesn't get to the kind of question I asked you initially, which I'll save for Mr. Flitter, but the wording of the letter does create, reading from E9, a false impression as to the authorization or approval. You basically stipulated to that. Well, I don't believe we stipulated to it, and I would respectfully disagree. This Court teaches us that we have to. Wasn't there a stipulation that there was authorization by the executives? Correct. I think stipulated fact number 12 actually speaks to that. I thought 12 said that they didn't read this particular letter or authorize this particular letter. This particular letter, before it went out and was mailed, correct. But stipulated fact number 12 does say that they authorized the use of these letters. Now, help me understand that. These letters, you're talking about they looked at the form language and said this letter's fine, but they didn't look at what they'd be expected to look at. Each individual letter that the macro for WordPerfect or Word, whatever it was, put into the name, they didn't look at that, but they did look at the letter, the generic John Doe letter, if you will. That they looked at and approved? Correct. Stipulated fact number 12 says they authorized the use of these letters in their capacity as executives of the company, but no individual, not these particular executives, not anyone, conducts an individualized review of a particular form letter before that particular form letter is sent to any particular debtor. That's not something that any debtor would expect, not the least sophisticated debtor or any debtor. And as far as the source, Your Honor, and what the source authorization or approval of the letter is, if you read the letter as a whole, which this Court teaches us that we must do so, it repeatedly reinforces that the source of the letter is Midland. You can see at the very top there's the Midland logo and Midland address.  There's an MCM account number that appears throughout the letter. The very first sentence of the letter, Your Honor, says it's an offer from Midland Credit Management, Inc. They repeatedly refer in the text of the letter to we would like to offer this. If we receive this, we will consider it to be paid in full. Contact us at our toll-free number. Any of our account managers will be able to assist you. As Judge McKee indicated earlier, we've read the letter. We've read it several times, and time is waning. Let me ask you about Avila because, as we've agreed, there are not a lot of cases out there, certainly not on E-9. Clearly, the Seventh Circuit's opinion doesn't help you. What would you suggest we make of the Avila opinion? Well, actually, Your Honor, I think that when you read Avila and Kahloman together, they do help us. How so? Because they demonstrate, number one, that lawyers' letters are significantly different than non-lawyer letters. That's what I was getting to. Should we, just assuming, again for purposes of argument, let's assume that we agree with you and this Court were writing an opinion. Should we somehow cabin the attorney letter cases and our holding in Rosenau to that particular type of letter? And because attorneys are special people with special obligations and a special role in society. Absolutely, Your Honor. That's why Congress specially regulated them with 1692 E-3 and told debt collectors that you cannot send a written communication that appears to be from a lawyer if it's not. And that's why the Avila court and Kahloman court went off at length about the special position that lawyers hold. I mean, a lawyer can sue you. A lawyer can exercise legal judgment. You know, in those cases there wasn't. And threaten to do so. And threaten to do so. And with some teeth. And those cases show that there was an escalation in the process. It's clear that this is the very first letter the debtors have received. It's the only letter in the record. There's no escalation here. That's different when you say the only letter in the record. It's clear that this is the first letter they received. It is not clear one way or another whether this is the first letter they received. Does it make a difference? I don't think it makes a difference. If not, why not? Because of what it says? Because of what it says and because the letter is in all sense from the company. There's no two different meanings here. I would submit there's only one meaning. The one meaning is this is a settlement offer. It will be honored by the company if it's accepted. That's the one meaning. Even if there was a debtor out there who thought, wow, maybe Mr. Eckert or Mr. Black sat down and looked at my account before this form letter was sent. Even if someone did believe that, that doesn't change the meaning of the letter. The meaning is the same within the meaning of this court's decisions in Brown and Wilson. Judge White, do you have any questions at all? No, I have none. Thank you. Thank you. Mr. Flitter? May it please the Court, Kerry Flitter for Lisa Campison-Bergers at Police. Maybe you can answer the question that I inadvertently put to Mr. Narita. Yes, sir, I will. I will. My answer is that the Fair Debt Collection Practice Act was intentionally crafted to be very broad. There's a broad ban against all manner of deception. And then there are individual, there are 16 subsections that without limiting the broad ban. And what specifically is the deception in this letter? The deception in this letter is creating the false and inaccurate impression that senior management of the company had something to do with the collection of this consumer. They did. They run the company. Isn't your position virtually turning agency principles on their head? No, sir, it is not. And the reason I say that is this is not about whether the settlement, the demand was authorized. This is about a statute where Congress specifically took it upon itself in E9 to put a ban on creating not just a false author, a false authorization and approval, but even creating a false impression as to who sent the letter. Well, let's assume that someone, the least sophisticated debtor, gets this letter, sees the phone number on the letter, picks up the phone and calls the number. Do you think that person is going to be very surprised if neither Eckert nor Black answers the phone? And if he or she can't get Eckert or Black on the line, is that debtor going to be saying, wait a minute, this letter is from Eckert or Black. I want Eckert or Black on the line. Do you really think someone is going to get that interpretation from this letter? I don't think, Your Honor, I'll be happy to answer the question to the best of my thinking. Of course, it's the least sophisticated consumer, a very low standard we're dealing with. I don't think someone calling the phone number is going to expect to reach Mr. Eckert or Black. Especially when the letter in its expressed terms suggests talking to one of our agents. I don't think someone calling is going to expect to get Mr. Eckert or Black. But I should add that the statute does not decree an exception to the false author and misrepresentation of sender provision based upon the other language in the body of the letter. I don't disagree with your proposition that Congress' purpose was to pass a statute that broadly attacks fraudulent representations and misleading representations. But do you really think Congress had in mind what you will probably disagree, but I will characterize as virtually a polite invitation to come negotiate? Do you think that that is one of the overreaching tactics of debt collectors that Congress had in mind when they passed the FDCPA? My answer is, sir, yes, I do. I don't think we should conflate, if I may respond to that very directly. I don't think we should conflate the terms of the settlement demand or the amount of the debt. Wait, wait, wait, wait. Settlement demand? Well, let me, well, if I could just answer, Jeff. We would like to offer, I don't know how many times this letter has come in this morning, the word please appears in this letter, please mail no later than. We would like to offer you a positive and flexible option. I mean, you're talking about, based upon your theory, whoever sent this letter out is the world's biggest wimp. I mean, this is really not what you expect from a debt collector. What I see in it, Your Honor, is I see it talks about current owner, original creditor, current balance, payment due date, financial difficulty, current balance, manager of consumer debt, and then the reverse. You may have gone through some financial difficulty. Right. And then the reverse side of it says, please see reverse side for important information, states, please understand this is a communication from a debt collector. This is an attempt to collect a debt, and any information used will be obtained for that purpose. This is not a birthday card. If you print that reverse side in your appendix, I'd look for it. I didn't see it. Sir, as the appellee, sir, I did not prepare the appendix. I believe it is, I'm sorry, Judge Weiss, if I'm, I believe it is appended. It should be a part of the Exhibit A to the amended complaint. If it's not for some reason, I'll be happy to supplement it, but I certainly. Go ahead, Your Honor. I'm sure we can get a copy if we need it. Yes, sir. I'll be happy to see it either. I didn't see it either, but everything you just read from the reverse side negates your deception argument. This is a letter from a collection agency. We are sending you the letter in an attempt to collect a debt. Doesn't that eliminate, you want them not to deceive. No, I think it conflates the issue with deception, which is the capacity to mislead the consumer about the authorship of the letter with what the end result may be. There are two different things. Well, that's why I asked you about who's going to come on, who do I expect to answer the phone when I call this company. But let me get at the stipulation for a second. I need to take another look at that. My understanding is that the stipulation was that the form of a letter was approved, not the individual wording up with the names. You're saying the form of a letter was not approved. Yes, sir. If I may read from 12. While Mr. Black and Mr. Eckert, in their capacity as officers of MCM, authorized the mailing of MCM collection letters, Black and Eckert did not personally direct their staff to send the subject collection letters to plaintiffs. Doesn't that make them the source of the letters? No. Make who the source of the letters? Black and Eckert. Eckert, Edward Black. They're not the source of the letters in any meaningful way. They didn't draft the letter. They didn't decide it should be sent to these people. They weren't trying to collect it. It's not meaningful when the top executives of the company authorize it to be done? No, it's not in the context of who's sending me this letter. You know, there's a reason why they chose to put it. Is there anything in the text of the statute, in fact, any of the subsections? This is an E9 case, right? E and E9, yes, sir. Is there anything in the text of the statute that states explicitly or even implies that there has to be some hands-on contact by a person with a particular debt collection file? That's really the import of your argument here. Somehow they had to have their hands involved to some extent in this particular account. To some extent, yes, sir. To account for a letter, you're saying they have to have their hands involved in the account? To answer that, I need to clarify stipulations. It doesn't say they authorized this letter. It doesn't say they authorized this series of letters. It doesn't say they authorized the letter to be sent to Burgos. It merely says, in a very general way, they authorized the mailing of the MCM collection letters. So, okay, as a president of the company, every letter that goes out is okay with me because I'm president of the company. To answer Judge Smith's question, clearly, sir, the Act does not say the words that Your Honor asked me, and I wouldn't take that position. But I do take the position that that deception relates to whether the least sophisticated consumer could reasonably believe that this letter came from or by or at the behest of the president or the general manager of consumer debt. Mr. Flitter, the appellant here, appellants maintain that this is a form letter and that the least sophisticated consumer would know that. You're taking the contrary position. You believe that the least sophisticated debtor or consumer would not know that this is a mass-produced form letter. Yes, sir. I am taking the position that this appears on its face to be a letter sent to any number of people, not just Burgos. I certainly take that position. Well, how far do we have to dumb down the test, the least sophisticated debtor test then? I mean, this is not on personal letterhead, right? It contains words and places that are in all caps. The name of the debtor appears that way. There's bold lettering used. There's a toll-free number used. There are generic statements used. There's no handwriting at all on this. You don't think that even with those indicia, the least sophisticated debtor would not recognize this as a form letter? Well, sir, there's nothing in the record about whether it's a form letter or those sorts of things. But to answer that, I think that the least sophisticated debtor – Well, but it does figure in the argument here in the brief. It does. But I'm just saying if Your Honor is asking me to opine on how many of the letters went out, I don't know that. And that's not something the consumer would know. What she has selected – That's not asking that. He's saying look at the letter that we have in front of us. It appears to be something that is mass-produced. And I think any – not only the least sophisticated debtor, but any idiot would know that an operation like this is not sent with someone sitting down, Bartleby at the typewriter, sending out letters to person A. Fair enough, Judge. We're now into Dickens. I was trying to throw out something. Fair enough. But I do think that it's a reasonable read of the letter to believe that the Vice President and General Manager of Consumer Debt had some involvement. But so what? And decided that this person should be in this group of letters. You said this was taking a statute that was intended to protect a population of people, debtors, and hammering someone over the head, using it as a – not a shield, but a sword, as I mentioned to Mr. Navid. Isn't that exactly what this is supposed to be? We've all seen these cases. And I had one not long ago where a debtor was called something like 187 times in the space of three days. They're called all hours of the day and night. Their 87-year-old mother was called and said your son, your deadbeat son, is going to be dragged off to prison. We have those cases, too. Sure. But that's what this is aimed at. It's not a letter that goes out, no matter who may have authorized it, saying, would you please consider our offer to help you resolve any financial difficulty you may have incurred and settle this obligation. That's basically what this letter said. It's the letter of a debt counselor. Well, I don't – if I may respond in this way on – I guess I'll call it an issue of judicial restraint. The statute is very broad. The statute covers this. The statute says that a debt collector may not create any – not only a false, but a false impression as to the authorship approval. Well, judicial restraint or judicial stupidity. I mean, if you're asking us to achieve an inane result based upon our obligation to read the statute in the text that we have and glean congressional intent only from the text and ignore that it gets us to an inane result, then that's maybe what we call judicial activism. Well, sir, I don't – Well, there are cases that say we have to assume that Congress didn't intend a ridiculous result. Respectfully, I don't think it's a ridiculous result to require that if a debt collector is going to invoke the offices of senior management to send collection letters to consumers that they either disclose that they're not involved, as in the attorney cases, or just use a name. There's a reason they use the title. Why do they use the – Well, that's a good point. The attorney cases are different, and there's no suggestion here that the title was used in a way to exert increased pressure on the debtor. Yes, there is, sir. Yes. How does that come out of your lap? That was in the briefing below where they – where the – we cited it to several places in our brief. Midland argued below. Let me ask you. Let me assume that what you're saying about the utilization of the title is – True enough. What difference? What does that mean? Doesn't it just mean that the head of the company is willing to stand by this offer? No, sir. It means that the head of the company or the general manager of consumer debt has taken some interest in my file, has taken some interest in this, that I may or may not owe. I should add there's nothing in this record about whether these people owe the debt or they don't, and they dispute the amount of the debt. One of the – it's not in the record. You'll forgive me. It's not even her debt. So we can't assume that these are just in owing debts, and they're just offering to make a cut-rate settlement offer. These are – there's nothing in the record about that. So you're saying had they inserted the paragraph saying, in the event that you believe you don't owe this debt or you dispute this debt, please call this number or please let us know, doesn't that resolve this? No, sir. No, sir, and to answer your question, and I have to go a wee bit beyond the record, this is not the initial letter. This is not an initial letter. It's not the initial letter. The record's not informed of what the initial letter was. That may be a fact issue, but I just wanted to clarify. Is it clear in the record this is not the first contact? It is not clear in the record that this is not the first contact one way or another, but I think that my – there wouldn't be any dispute that this was not the initial letter. But you don't – you don't – I'm sorry, sir. He said it was the initial letter, so there is no dispute. Okay. Well, that may be a fact issue that we take up on remand. But I simply want to make the point that what we're dealing with here is liability. We're dealing here, has there been a violation of the statute by this debt collector choosing, and we've cited in our brief where they said below that they put in the name and title, the name and title of senior management to increase the likelihood of collection on the debt. So we know that that was not only a deceptive intent. We don't have to show intent, but that shows a deceptive purpose, that they included the title of senior management in order to increase recovery on the debt. Of course the evidence is going to show that a consumer will react differently when they get a letter from the Vice President of Consumer Debt than when it's Joe Blow, the debt collector. And that's the reason that these alias cases have no cut. It doesn't matter if – I think Judge Weiss has a question. I'm sorry, sir. Probably the reason for the officer signing this was to ensure that the debtor knew that the company's offer was valid and we backed up by the officials in the company. Sir, Judge Weiss, I saw that in the briefs. I don't understand that argument even a little bit. A letter comes out from – If you were the debtor and you wanted to enforce the agreement to settle for 50 percent, wouldn't it be important that you have the officer's signature on the offer? No, sir. If there was a settlement made, not just a collection letter, if there was a settlement made, then – Not before you get to that point. Right. You have to accept the settlement. Then sent by any agent of the company is going to be binding on the company. It would be a very odd way to show that there was some authorization and there's nothing in record. Does your consumer on the lower scale that you're talking about know that anybody in the company can sign a letter binding the company? Wouldn't he be impressed by the fact that the vice president said that? He would be impressed by the fact that the vice president took some level of personal interest in his file. I mean, when you talk about what's the source of a letter, a source – if I get a letter from Judge McKee after argument asking me to supplement something, isn't it perfectly reasonable to say the source is Judge McKee and the source is the Third Circuit Court of Appeals? Here the source of the letter is the one who signed it under their name sincerely. What if the clerk sends you a form letter? Wouldn't they assume that comes from the court also? If the clerk sends me a form letter, not signed by the president or an officer in the bench, the source of the letter is the clerk and the Court of Appeals. I mean, just common sense tells us that, not just one or the other, especially in light of a remedial statute where it's to be construed broadly. The FDC commentary speaks directly to this. And I submit in closing that the certified question that this court accepted for the interlocutor review, does it violate the FDCPA for senior management to sign a collection letter in which they were not involved? The answer is yes, that does. They'll have their chance on damages. And that gets to the heart. Let's give them the chance on rebuttal. On damages, they can argue this is a small case. We don't owe a lot. Let's give them the chance on rebuttal. Thank you, sir. Mr. Flitty, you're tough. You're on the right side of this case. You're tough. You're on the right side of this case. I thought I'd be better on the left side. John, I'm going to be extremely brief unless the court has questions for me. This is a form letter, and as we cited in our brief to you, and it appears at page 38 of the record. Is it stipulated that this is the first contract? Does 512 go to that? No, it is not stipulated. And there's actually no evidence one way or the other. Does it matter? Excuse me? Does it matter? No, it doesn't matter. Well, Mr. Flitty is going to say that they arguably are using the titles and the names to up the ante. It's no longer at the level of a desk clerk. Now the head of the company is involved, and it's therefore coercive. Well, perhaps the court could draw that kind of conclusion if there was anything in the record to support it, but there's not. It's not how the case is pleaded, is it? No, it's not. I mean, the statutory violation that is alleged is based on this letter. Absolutely. And there's no reference to any other letter in the record. That's the theory of liability. That's correct. Your Honor, just to finish my point, at page 38 of the record, it is specifically alleged by the plaintiffs that this is a form letter. So I don't think there was a discussion earlier about whether it was or wasn't a form letter. No, the question isn't whether it is a form letter. The question is whether or not the least sophisticated consumer or debtor would see it as a form letter. You're absolutely correct. Lastly, there was a discussion about language on the reverse side of the letter. Judge Weiss asked about that. My copy of the materials in the record does not have the reverse side language. I don't know that it appears in the record. How can that be submitted? However, Your Honor, my last point is that language is specifically required by the FDCPA. It's 1692E11 mandates that my clients have to put that language in every single communication. So if it is there, it's because it has to be. Okay. With that, I'll submit it. Okay, thank you. Thank you again for a very helpful argument. We'll take Matt under advisement and move to the final case, Harvard Industries.